**PETER R. MERSEREAU,** OSB No. 73202
pmersereau@mershanlaw.com
**KAREN M. VICKERS,** OSB No. 91381
kvickers@mershanlaw.com
MERSEREAU & SHANNON LLP
One SW Columbia Street, Suite 1600
Portland, Oregon 97258-2089
Telephone: 503.226.6400
Facsimile: 503.226.0383

Of Attorneys for Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **MICHAEL E. NIELSON**, | Case No. 05-3095-PA |
| Plaintiffs, | |
| v. | DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |
| **PORT OF GOLD BEACH,** a governmental body existing under the laws of the State of Oregon; and **WILLIAM McNAIR** individually, | |
| Defendants. | |

Defendants Port of Gold Beach ("Port") and William McNair respectfully submit the

within memorandum in support of their motion for summary judgment on each of Plaintiff's

claims set forth in his complaint.

/ / / /

/ / / /

/ / / /

/ / / /

PAGE 1 -  DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ 3

    Cases ........................................................................................................ 3

    Statutes .................................................................................................... 4

I.      OVERVIEW ................................................................................... 6

II.     FACTS ........................................................................................... 7

III.    DISCUSSION ............................................................................... 10

  A.   The FMLA claim ...................................................................... 10

  B.   The ADA claim ......................................................................... 11

  C.   State disability discrimination: ORS 659A.100-A.145 ............ 12

     1.   As of November 23, 2004, Nielson was not a "disabled person." ........... 13

     2.   Nielson did not request an accommodation. ................................. 15

     3.   Nielson cannot prove causation. ............................................... 16

  D.   Worker's compensation discrimination/retaliation ................... 16

  E.   Statutory whistleblowing .......................................................... 17

  F.   Breach of contract .................................................................... 18

     1.  Nielson's breach of contract claim is time-barred. ..................... 18

     2.   As a matter of law, the Port had cause to terminate Nielson's employment. ........ 19

  G.   Wrongful discharge .................................................................. 20

  H.   Invasion of privacy, violation of the Public Records Act, and negligence per se .. 21

  I.   Claims against defendant McNair in his individual capacity ...... 21

  J.   Intentional infliction of emotional distress ............................... 23

  K.   The defamation and false light claims ....................................... 25

CONCLUSION .............................................................................................. 26

MERSEREAU & SHANNON, LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

# TABLE OF AUTHORITIES

## Cases

*Acosta v. Pacific Enterprises,*
    950 F.2d 611, 620 (9th Cir. 1991) ........................................................ 9

*Albertson's, Inc. v. Kirkinburg,*
    527 U.S. 555, 565 (1999) ...................................................................... 11

*Allen v. Hall,*
    328 Or. 276, 281(1999) ......................................................................... 20

*Babick v. Oregon Arena Corp.,*
    160 Or. App. 140, 150 (1999) ............................................................... 22

*Bachelder v. America West Airlines,*
    259 F. 3d 112, 1124 (9th Cir., 2001) .................................................... 8

*Bjurstrom v. Oregon Lottery,*
    202 Or. App. 162 (2005) ....................................................................... 15

*Chesterman v. Barmon,*
    305 Or. 439 (1998) ................................................................................ 21

*Clarke v. OSHU,*
    206 Or. App. 610 (2006) ....................................................................... 22

*Diaz v. Ft. Wayne Foundry Corp.,*
    131 F. 3d. Supp. 711, 712 (7th Cir., 1997) .......................................... 8

*Hall v. The May Department Stores,*
    291, Or. 131, 135 (1981) ....................................................................... 22

*Honstein v. Metro West Ambulance Service, Inc.,*
    193 Or. App. 457 (2004) ....................................................................... 10

*Koch v. Laborico,*
    66 Or. App. 78, 85, (1984) .................................................................... 24

*Lewis v. Oregon Beauty Supply Co.,*
    302 Or. 616, 625-626 (1987) ................................................................ 21

MERSEREAU & SHANNON, LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

*Madani v. Kendall Ford Co.,*
   312 Or. 198, 205-06 (1991) ................................................................ 22

*McGanty v. Staudenraus,*
   321 Or. 532, 535-536 (1995) ....................................................... 20, 22

*McNabb v. Oregonian Publishing Co.,*
   69 Or. App. 136, 139 (1984) ............................................................... 24

*Patton v. JC Penney, Co.,*
   301 Or. 117, 122 (1986) ..................................................................... 22

*Rankin v. Sea Gate Techs Inc.,*
   246 F. 3d 1145, 1148 (8th Cir., 2001) ............................................... 8

*Reeves v. Sanderson Plumbing Products Inc.,*
   530 U.S. 133, 151-152 (2000) ............................................................ 14

*Times Co. v. Sullivan,*
   376 U.S. 254 (1964) ............................................................................ 23

*Toyota Motor Mfg, Kentucky, Inc. v. Williams,*
   534 U.S. 184, 202, (2002) ................................................................... 11

*Washburn v. Columbia Forest Products, Inc.,*
   340 Or. 469, 479 (2006) ..................................................................... 11

*Wheeler v. Marathon Printing, Inc.,*
   157 Or. App., 290, note 6 (1998) ........................................................ 10

## Statutes

29 U.S.C. § 2601-2617 .......................................................................... 4
29 U.S.C. § 2615(a)(1) ........................................................................ 8, 9
29 U.S.C. § 2615(a)(2) ........................................................................... 8
42 U.S.C. §12102-12117 ........................................................................ 4
42 U.S.C. §12111(5)(A .......................................................................... 10
ORS 192.502 ......................................................................................... 4
ORS 192.505 ......................................................................................... 4
ORS 30.265(1) ...................................................................................... 22
ORS 30.265(3)(c) .................................................................................. 19
ORS 659A.040(1) .................................................................................. 14
ORS 659A.040–659A.069 ....................................................................... 4
ORS 659A.100(1)(a) ............................................................................. 11

MERSEREAU & SHANNON, LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

ORS 659A.100(2)(d)...........................................................................................11

ORS 659A.100–659A.145 .................................................................................4

ORS 659A.100-A.145 ......................................................................................10

ORS 659A.112 ...................................................................................................10

ORS 659A.112(1) ..............................................................................................10

ORS 659A.139 ...................................................................................................10

ORS 659A.200-659A.224 .................................................................................4

ORS 659A.203-224 ...........................................................................................15

MERSEREAU & SHANNON, LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

## I.     OVERVIEW

Plaintiff Michael Nielson ("Nielson") brings a mix of federal and pendent state claims arising out of the termination of his employment as the Port's general manager on November 23, 2004. Nielson brings the following claims for relief;

1.      violation of the Family Medical Leave Act, 29 U.S.C. § 2601-2617;

2.      violation of the Americans with Disabilities Act, 42 U.S.C. §12102-12117;

3.      violation of ORS 659A.100–659A.145 (state disability discrimination);

4.      violation of ORS 659A.040–659A.069 (discrimination against injured workers);

5.      violation of ORS 659A.200-659A.224 (whistleblowing);

6.      breach of contract;

7.      wrongful discharge;

8.      invasion of privacy;

9.      intentional interference with economic relationships (against defendant McNair individually);

10.     intentional infliction of emotional distress;

11.     defamation;

12.     false light;

13.     violations of Oregon's Public Records Act, ORS 192.502 and ORS 192.505; and

14.     negligence per se.

For the following reasons, defendants move for the entry of summary judgment in their

MERSEREAU & SHANNON, LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

favor on each of the foregoing claims for relief.

## II.    FACTS

The concise statement of facts and the declarations of William McNair and Peter R. Mersereau establish the following facts pertinent to defendants' motions.

The defendant Port is a statutorily created Port district servicing the citizenry of Gold Beach, Oregon.  It is governed by a Commission consisting of five elected members, each of whom serves a four year term.  Nielson was hired as the Port's general manager in March of 2000.  In April of 2001, Nielson and the Port entered into a written employment agreement which provided, among other terms, for a five year term, provided said agreement was not terminated earlier pursuant to its terms.  Basically, the Port had the option of terminating Nielson's employment for one of the stated reasons constituting "cause," or for no reason, provided in that instance that the Port paid Nielson certain specified severance.

During 2002-2004, Nielson displayed significant performance deficiencies in his job as general manager.  These deficiencies included breaches of conduct in violation of the employee rules set forth in the Port's personnel policies, inattention to work duties, repeated refusal to comply with instructions of the Commission, and a pattern of disrespectful and insubordinate communications with Commissioners and citizens.

In May 2004, three of the five Commissioners were recalled by the citizens of Gold Beach.  Nielson's working relationship with the remaining two Commissioners, as well as the three newly appointed Commissioners, deteriorated rapidly during the balance of 2004.  One of

MERSEREAU & SHANNON, LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

the distinctive features of this deterioration was Nielson's habit of communicating with individual Commissioners and the Commission as a whole in caustic, abusive and unprofessional terms.  By June of 2004, Mr. Nielson believed that his working relationship with the Commission was "irreparably broken."  Mersereau declaration, Exhibit A, page 4.

In September 2004, the Commission completed a written evaluation of Nielson's performance.  Defendant McNair abstained from participating in the evaluation on account of Nielson's concerns regarding their relationship.  The Commissioners' individual comments were uniformly negative.  On October 6, 2004, Nielson was provided with a copy of his performance evaluation together with a copy of a summary of the individual Commissioners' evaluation comments.  Of the total of 65 responses in the various performance categories, 30 were "unsatisfactory," 21 "needed improvement," and 14 "met expectations."

On October 27, 2004, the Port's attorney sent a letter to Nielson's attorney (whom he had retained earlier in the summer) providing him with notice under section 3 of the employment agreement of 23 separate "charges" forming the basis for a "cause" termination under the agreement.  The letter stated that the Commission would be considering termination of Nielson's employment for cause as a result of said charges, and that Nielson would be given a meaningful opportunity to confront and respond to the charges at a hearing scheduled for November 11, 2004.  Following discussions amongst counsel over scheduling conflicts, Port counsel advised Nielson's attorney on November 17, 2004 that the hearing date had been moved back to November 23, 2004.  In that same letter, Port counsel again invited Nielson and/or his attorney to respond to the charges in writing, and to attend the hearing.  On November 23, 2004, the Commission passed a resolution terminating Nielson's employment for cause.  Neither Nielson

PAGE 8 -  DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

nor his attorney appeared at that meeting.

On October 15, 2004, Nielson delivered to the Port offices three medical notes, dated, respectively, October 6, 8, and 15.  In these notes, Nielson's treating physicians stated that he was suffering from job related stress, and should be off of work.  On October 21, 2004, one of Nielson's physicians released him to return to work for two hours a day commencing on October 25.  On November 1, the Port received a note from another of Nielson's physicians that his part-time return to work had worsened his condition, and that he should remain off of work "for the immediate future."

At no time prior to the termination of Nielson's employment on November 23, 2004, did the Port receive notice in any form from Nielson or his attorney that Nielson wished to take FMLA leave.  None of the forms applicable to said leave was requested or filled out by either Nielson or the Port.  In addition, at no time prior to his termination did Nielson or his attorney request any "accomodation" of any kind to his job duties as a result of a medical condition.[1]  At some point after October 29, 2004, the Port became aware that Nielson had filed a worker's compensation claim.  The claim form was dated October 29, 2004.  The claim was tendered to the Port's worker's compensation carrier for handling.

After the termination resolution was passed on November 23, 2004, a reporter for the local newspaper in Gold Beach requested a copy of the statement of charges sent to Nielson (through his attorney) on October 27, 2004.  The Port refused to produce that information, contending that it constituted confidential employee information, and as such was exempt from disclosure under Oregon's Public Records Act.  The reporter then sought review by the Curry

---

[1]  To the extent Nielson's request to return to work on a part-time basis (2 hours a day) could be deemed a request for an "accommodation," that request was granted without conditions.

PAGE 9 -  DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

County District Attorney, who overruled the Port in a December 9, 2004 letter in which she concluded that the material must be disclosed under the Act.  The Port then turned over the materials to the reporter.

## III.     DISCUSSION

### A.  The FMLA claim

In paragraph 17 of his complaint, Nielson alleges that the Port terminated his employment "…in retaliation for Plaintiff using medical leave time."  Although Nielson has styled this cause of action as a "retaliation" claim under FMLA, it is more accurately characterized as a "restraint" or "interference" claim under 29 U.S.C. § 2615(a)(1), which makes it unlawful for an employer to "interfere with, restrain, or deny the existence of or the attempt to exercise, any right provided" by the Act:

> "By their plain meaning, the anti-retaliation or anti-discrimination provisions [namely, those set forth at 29 U.S.C. § 2615(a)(2)] do not cover visiting negative consequences on an employee simply because he has used FMLA leave.  Such action is, instead, covered under § 2615(a)(1), the provision governing "interference" [with the] exercise of rights."

*Bachelder v. America West Airlines,* 259 F. 3d 112, 1124 (9th Cir., 2001).  See also, *Diaz v. Ft. Wayne Foundry Corp.,* 131 F. 3d. Supp. 711, 712 (7th Cir., 1997), and *Rankin v. Sea Gate Techs Inc.,* 246 F. 3d 1145, 1148 (8th Cir., 2001).

Nielson's problem in the instant case is that he can muster neither direct nor

MERSEREAU & SHANNON, LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

circumstantial evidence linking his termination with his alleged exercise of rights under FMLA.

Assuming, for purposes of argument, that Nielson's medical leave commencing on or about

October 6, 2004, would have qualified him for leave under FMLA, it is undisputed that he never

requested such leave.  Nielson at no time communicated to the Port his intent to take FMLA

leave, nor is there any evidence in this record that the Commissioners perceived that Nielson had

exercised FMLA rights prior to his termination.  The subject simply never came up.  In his

deposition taken in this case, Nielson could offer nothing but speculation when asked about facts

supporting this claim:

> "Q:      What makes you believe the Port of Gold Beach terminated
> you in part in retaliation of your use of medical leave?  Which I
> assume was your leave in October and November of 2004.
> A:      It was apparent that the Commission was upset with my
> nonattendance prior to going out on medical leave in October.  I
> can only speculate, and I would prefer not to give speculative
> answers, but I can only speculate that an open-ended extended
> medical leave only exacerbated their previous frustration with my
> nonattendance to their meetings."

Mersereau Declaration, Exhibit A, page 5.  More than a plaintiff's speculation is

required to make out a triable issue on a claim brought under 29 U.S.C. §2615

(a)(1).  *Acosta v. Pacific Enterprises,* 950 F.2d 611, 620 (9th Cir. 1991).

For these reasons, defendants are entitled to summary judgment on plaintiff's FMLA

claims.

### B.  The ADA claim

Whether analyzed from the standpoint of subject matter jurisdiction, or within an

PAGE 11 -  DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

"elements" context, Nielson's claims under the ADA fail for the indisputable fact that the Port employs fewer that 15 employees.  See 42 U.S.C. §12111(5)(A) .  While defendants also contend that Nielson cannot establish the other elements of an ADA discrimination/retaliation claim, the court need not reach those issues.[2]

### C.  State disability discrimination: ORS 659A.100-A.145

In his third claim for relief, Nielson alleges that the Port discriminated against him in violation of the Oregon disability statute, ORS 659A.112.  Summary judgment is appropriate on this claim because: (1) Nielson was not disabled; (2) Nielson was never discriminated against because of any medical condition; and (3) Nielson did not request accommodation or, alternatively, his accommodation was never denied.

To establish a *prima facie* case of disability discrimination, Nielson has the burden of proving that (1) he was a disabled person at the time of his termination, (2) he is a qualified individual—meaning that he could perform the essential functions of his job with or without a reasonable accommodation, and (3) the Port terminated him because of his disability.  ORS 659A.112(1); and see *Honstein v. Metro West Ambulance Service, Inc.,* 193 Or. App. 457 (2004).  As the Oregon Court of Appeals noted in *Wheeler v. Marathon Printing, Inc.*, 157 Or. App., 290, note 6 (1998), the caselaw interpreting the ADA is instructive in applying the Oregon statute.  In addition, that statute itself requires the Oregon laws to be "construed to the extent possible in the manner that is consistent with any similar provisions of the [ADA]." ORS 659A.139.

---

[2] These elements are discussed in Part C, *infra*.

MERSEREAU & SHANNON, LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

**1.     As of November 23, 2004, Nielson was not a "disabled person."**

Nielson must first establish that he was a "disabled person" as defined under ORS 659A.100(1)(a). That statute identifies a "disabled person" as someone having an impairment that "substantially limits" a major life activity. ORS 659A.100(2)(d) defines the term "substantially limits" as follows:

> a.     The impairment *renders the individual unable to perform a major life activity* that the average person in the general population can perform; or (B) the impairment *significantly restricts the condition, manner or duration under which an individual can perform a particular major life activity* as compared to the condition, manner of duration under which the average person in the general population can perform the same major life activity. (Emphasis supplied.)

As recently held by the Oregon Supreme Court, "… a person must possess a substantial limitation that operates *presently*, as opposed to potentially or hypothetically…. (Emphasis in original.) *Washburn v. Columbia Forest Products, Inc.,* 340 Or. 469, 479 (2006). The court further concluded in *Washburn* that the definition of "disabled person" must take into account measures that might ameliorate the impairment in focus. Id at 479.

The "substantial limitation" contemplated under ORS 659A.100(1)(a) must, in fact, be substantial. *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 565 (1999). The disability in focus must restrict a "major life activity," not merely affect one's range of activities, in order to qualify as a disability. *Toyota Motor Mfg, Kentucky, Inc. v. Williams,* 534 U.S. 184, 202, (2002).

In the case at bar, Nielson simply alleges in conclusiory fashion that he had a physical

MERSEREAU & SHANNON, LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

disability related to his heart, and an additional disability related to post-traumatic stress syndrome unrelated to his work with the Port. See complaint at paragraph 9. The essence of Nielson's disability discrimination claim is that the Port's conduct aggravated both of these conditions. See complaint at paragraph 10. It is Nielson's burden to come forward with sufficient evidence establishing that either of the foregoing conditions qualified him as a "disabled person" under the Act.

In his deposition, Nielson testified that neither of the aforesaid conditions was known to be disabling as of November 2004, and that he had not reported any such disabilities to the Port:

> Q:      In paragraph 9 of your complaint in this case, you allege that you have a disability related to your heart and a disability related to post traumatic stress syndrome. Are you aware of that?
> A:      Yes. That was not evident in November of 2004.
> Q:      Either one of them, the heart disability and the PTSD?
> A:      There was a heart condition. It certainly had not been declared a disability. And PTSD was not in the vernacular in November of 2004.
> Q:      So you never reported to the Port prior to November 2004 that you had a disability related either to your heart or PTSD did you?
> A:      No.
> Q:      And you never requested prior to November 23 of 2004 that the Port accommodate any such disability did you?
> MS. MCGOVERN: I'm going to object to the form of the question. It asks him to give you a legal conclusion which he cannot do.
> MR. MERSEREAU: Go ahead.
> THE WITNESS: Maybe if you restate the question.
> Q:      At any time prior to November 23 of 2004, did you or anyone on your behalf ask the Port to accommodate either a heart disability or a disability related to PTSD?
> MS. MCGOVERN: Same objection.
> THE WITNESS: As I previously stated, PTSD was

PAGE 14 - DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

not even in the vernacular at the time.  The word disability is misapplied.  The condition of the heart was well known by the Commission because of some previous attention being given to the arterial fibrillation that showed up as early as 2001.  But it was certainly not a disabling condition.  The Commission knew I took medical leave to take care of that condition; that that heart condition was there but it was certainly not disabling.

Q:      Alright.  Did you ever ask the Commission to change your job description in any way to accommodate a heart condition.

A:      No.

MS. MCGOVERN:  We are going to take a break for a second.

MR. MERSEREAU:  Alright.

Mersereau Declaration, Exhibit A, page 2-3.


**2.      Nielson did not request an accommodation.**


As the foregoing deposition excerpt makes clear, Nielson never requested an accommodate of either of his alleged disabling conditions.  ORS 659A.112(2)(e) provides as follows:

(2)      An employer violates subsection (1) of this section if the employer does anyone of the following:

…(e) the employer does not make reasonable accommodation to the known physical or mental limitations of an otherwise qualified disabled person who is a job applicant or employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer.

Id.  The only request made by Nielson that could be deemed a request to accommodate, was the request to return to work, in October, 2004, for two hours

PAGE 15 -  DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

a day.  This request was granted, without conditions.

### 3.     Nielson cannot prove causation.

Even if Nielson could prove he was disabled, he cannot establish that he was terminated because of his disability.  It is Nielson's burden to establish that one or more of his alleged disabilities "actually played a role in [the Port's termination] process and had a determinative influence on the outcome."  *Reeves v. Sanderson Plumbing Products Inc.,* 530 U.S. 133, 151-152 (2000).  As defendant McNair's declaration makes clear, the Commission had multiple concerns regarding Nielson's performance as of November 2004.  None of the contemporaneous documentation relating to those concerns contains even a veiled reference to any of Nielson's purported medical conditions.  Nielson cannot meet his burden of proving causation in this case.

### D.  Worker's compensation discrimination/retaliation

ORS 659A.040(1) provides as follows:

> It is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term of condition or employment *because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS 656 or has given testimony under the provisions of those laws.*  (Emphasis supplied.)

In this case, Nielson signed his worker's compensation claim on October 29, 2004.  By that date, he had received his negative performance evaluation, and his attorney had been provided with

PAGE 16 -  DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

notice of the 23 charges giving rise to his eventual termination on November 23.

At some point after October 29, the Port became aware of Mr. Nielson's filing of this worker's compensation claim, and tendered it to the Port's worker's compensation carrier. There is simply no evidence (direct or circumstantial) suggesting that Nielson's presentment of a worker's compensation claim in any manner contributed to his termination.

### E. Statutory whistleblowing

Nielson alleges that he engaged in protected whistleblowing under state law, specifically ORS 659A.203-224. Specifically, he alleges in paragraphs 6, 8 and 33 in the complaint that he reported what he perceived to be defendant McNair's "conflicts of interests," and further, that he filed a "grievance" against McNair. As for this so-called grievance, defendants presume plaintiff is referring to the July 19, 2004 memorandum attached to Mr. McNair's declaration as Exhibit D. For the following reasons, Nielson cannot establish the elements of statutory whistleblowing.

As found by the Oregon Court of Appeals in *Bjurstrom v. Oregon Lottery,* 202 Or. App. 162 (2005), Oregon's whistleblowing law was not intended to provide "a shield for malcontents." Id at 171. In contrast, a plaintiff must demonstrate that he identified "gross waste of funds," "abuse of authority or substantial and specific danger," or wrongful practices of comparable magnitude such that the malfeasance undermines the organization's ability to perform its mission. Id at 172. The court in *Bjurstrom* construed the legislative history of this statute as follows:

"Thus, when viewed as whole, the legislative history leads us to

PAGE 17 -  DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

> conclude that protected disclosures of "mismanagement" are limited to disclosures of information similar in magnitude to the other listed categories. Such disclosures, then, do not include routine complaints about policies that employees must implement or practices that employees do not like. Rather, we conclude that the legislature intended "mismanagement" to refer to serious agency misconduct having the effect of potentially undermining the agency's ability to fulfill its public mission."

Id at 173.

As Nielson's pleadings make clear, his so-called "whistleblowing" consisted of no more than expressing his personal beefs with defendant McNair. Nielson's "grievance" sets forth his perceptions of the ways he believes he had personally been mistreated by one of five Port Commissioners. In short, this was personal between Nielson and defendant McNair. This is not the type of reporting or "disclosure" contemplated in ORS 659A.203(1)(b).

Moreover, Nielson must establish by a preponderance of the evidence that he was terminated because of his purported whistleblowing. The vote to terminate Nielson's employment was unanimous. Nielson must come forward with evidence establishing a causal connection between his complaints regarding defendant McNair and the Port's decision to terminate. He cannot do so.

## F.  Breach of contract

### 1.  Nielson's breach of contract claim is time-barred.

Nielson's employment contract provides, in pertinent part, as follows:

PAGE 18 -  DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

"**section 3(5)**…If employee disagrees with the decision of
the Commission to terminate employee for cause, employee agrees
that any cause of action employee may have for unlawful
termination or related to such termination shall expire and be
legally barred sixty (60) days after the termination date."

McNair declaration, Exhibit A, page 2.  Nielson's complaint in the instant matter was filed in

October 2005, well after the expiration of the foregoing 60 day period.  As a result, Nielson's

breach of contract claim is time-barred.

**2.  As a matter of law, the Port had cause to terminate Nielson's employment.**

In the event the court reaches the merits of Nielson's breach of contract claim, the Port

further contends that it had cause to terminate Nielson's employment, as a matter of law.

The employment agreement defines "cause" as follows:

(1.)  Employee's breach of this agreement in a material way;

(2.)  Employee's serious or repeated breaches of conduct in
violation of rules of conduct of Port employees, contained
in the Port's Personnel Policies as they now exist or may
hereafter be amended.

(3.)  Any form of dishonesty, criminal conduct or conduct
involving moral turpitude connected with Employee's
employment or which reflects adversely on the Port's
reputation or operations.

(4.)  Repeated refusal of Employee to comply with reasonable
instructions of the Commission, or to comply with Port
policies or rules;

(5.)  Continued or repeated problems with Employee's job
performance, conduct at work or inattention to work
duties….

PAGE 19 -  DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

McNair declaration, Exhibit A, page 2. The Port contends that the "charges identified" in Mr. Jordan's October 27, 2004 letter to Nielson's attorney, constitute good cause for Nielson's discharge, as a matter of law.

Perhaps more than anything else, the written communications from Nielson identified in the McNair declaration demonstrate beyond cavil that Nielson had lost all sense of balance in his relationship with the Commission. The duty to follow instructions and treat one's employer with a modicum of professionalism and respect, is an inherent attribute of the job description of an upper level administrative post of this nature. Nielson's repeated accusations against individual commissioners (many of which were delivered in a caustic and pejorative tone), represent the polar opposite of a functional working relationship between a Commission and its general manager in a public body. Nielson had every opportunity to remediate this conduct (which spanned a period of years), but he failed to do so.

For the above reasons, the Port is entitled to summary judgment on Nielson's breach of contract claim.

## G. Wrongful discharge

Nielson's wrongful discharge claim is premised on the same alleged conduct giving rise to the aforesaid statutory claims. For the same reasons advanced by defendants in support of their motion for summary judgment directed towards those claims, Nielson's wrongful discharge claim should be dismissed.

MERSEREAU & SHANNON, LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

**H.  Invasion of privacy, violation of the Public Records Act, and negligence per se**

Nielson's eighth claim (invasion of privacy), thirteenth claim (violation of Oregon's

Public Records Act) and fourteenth claim (negligence per se) all appear to arise out of the

publication by a local Gold Beach newspaper of the statement of charges underlying Nielson's

terminations.  These three claims all fail for the same reason: that is, the Port provided this

information to the media only after being ordered to do so by the Curry County District

Attorney.  The Port cannot be held civilly liable for complying with a lawful order of this nature.

In addition, to the extent any of these three claims is premised on statements made by

Port Commissioners during open meetings, said statements are absolutely privileged, and are

covered by legislative and discretionary immunity.   See ORS 30.265(3)(c).  Finally, even if the

Port's release of this information were not privileged as argued above, Nielson cannot establish

the other elements of these three claims.

**I.   Claims against defendant McNair in his individual capacity**

On his ninth claim for relief, Nielson attempts to sue defendant McNair in his individual

capacity for intentionally interfering with his employment relationship with the Port.  This claim

fails for the following reasons.

In order to state a claim for intentional interference with economic relations, Nielson

must establish each of the following elements:

(1)    the existence of a professional or business relationship;
(2)    intentional interference with that relationship or advantage;

PAGE 21 -  DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

(3)    by a third party;

(4)    accomplished through improper means or for an improper purpose;

(5)    a causal effect between the interference and the harm to the relationship or prospective advantage; and

(6)    damages.

*Allen v. Hall,* 328 Or. 276, 281(1999); *McGanty v. Staudenraus,* 321 Or. 532, 535-536 (1995). Under the facts at bar, Nielson cannot establish the second, third, fourth and fifth elements of this tort.

First, Nielson does not allege with any particularity precisely what defendant McNair "did" to him in the employment context. In paragraphs 6 and 8 in the complaint, respectively, Nielson alleges that McNair's conduct became "increasingly hostile" toward him, and that McNair took "retaliatory actions". Nielson pleads no other facts indicating how this alleged hostility and retaliation manifested itself in terms of discrete employment actions in the workplace. At all material times, defendant McNair was but one of five Port Commissioners. His official actions were taken during open meetings in his official capacity as a Commissioner. Though Nielson may have disagreed with the actions taken by defendant McNair and the other Commissioners in that capacity, such conduct cannot be viewed as tortious interference with his employment contract.

Second, because he was acting in the course and scope of his official capacity as a Commissioner at all material times, defendant McNair is not a "third party" as required for this tort. In *McGanty, supra,* the Supreme Court found that the principles of respondeat superior provide guidance to determine whether an employee is a third party for purposes of this tort. Id

PAGE 22 -  DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

at 538.  This brings into play the elements of scope of employment, which were delineated by the

Supreme Court in *Chesterman v. Barmon,* 305 Or. 439 (1998) as follows:

> (2)    when the employee's act occurred substantially within the
> time and space limits authorized by the employment;
> (3)    where the employee was motivated, at least partially, by a
> purpose to serve the employer; and
> (4)    where the employee's act was of a kind which the
> employee was hired to perform.

Id. at 442.  Even if Nielson had pled (or could prove) facts suggesting that defendant McNair

took adverse action against him in the workplace (which he cannot), the fact remains that

defendant McNair was acting within the course and scope of his official duties as a

commissioner at all material times.  Since the Port would be vicariously liable for defendant

McNair's conduct under those circumstances, his conduct would, in effect, be that of the Port.

As a party to Nielson's employment contract, the Port cannot interfere with its own contract.

*Lewis v. Oregon Beauty Supply Co.,* 302 Or. 616, 625-626 (1987).

Third and finally, even if Nielson could clear the aforesaid hurdles, he cannot establish

that defendant McNair acted through improper means or for an improper purpose.  Since Nielson

cannot establish any actions that qualify as intentional interference in the first place, he can

hardly prove these elements relating to defendant McNair's state of mind.  For all of these

reasons, defendant McNair is entitled to summary judgment on Nielson's tortious interference

claim.

**J.   Intentional infliction of emotional distress**

MERSEREAU & SHANNON, LLP
L A W Y E R S
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

In his tenth claim for relief, Nielson purports to state a claim for intentional infliction of emotional distress ("IIED") against both defendants. For the reasons advanced immediately above, defendant McNair cannot be sued individually on this count because he was acting in the course and scope of his official duties at all material times. See ORS 30.265(1).[3]

With regard to the elements of this claim, Nielson must prove the following:

(1) that the defendants intended to inflict severe mental or emotional distress or knew that severe emotional distress was substantially certain to result from their conduct;

(2) that the defendants' acts in fact caused Nielson's severe mental or emotional distress; and

(3) that the defendants' acts consisted of "some extraordinary transgression of the bounds of socially tolerable conduct" or exceeded "any reasonable limit of social toleration."

*Patton v. JC Penney, Co.,* 301 Or. 117, 122 (1986), quoting from *Hall v. The May Department Stores,* 291, Or. 131, 135 (1981). Whether a complaint sufficiently alleges conduct within the foregoing standards is a question of law for the court. *Babick v. Oregon Arena Corp.,* 160 Or. App. 140, 150 (1999).

On this record, Nielson cannot establish that the defendants' conduct was sufficiently outrageous to sustain an IIED claim under the foregoing standards. On balance, the Oregon Appellate courts have been reluctant to find IIED liability in employment cases. See, *Madani v. Kendall Ford Co.,* 312 Or. 198, 205-06 (1991); *McGanty supra.* at 543. The only "conduct" in focus in this case is the Commission's resolution to terminate Nielson's employment. Even if Nielson were able to establish that his termination ran afoul of one or more of the statutes he has

---

[3] This section shields individual public employees from personal liability on claims arising out of conduct occurring within the course and scope of their employment, and requires that the public entity be substituted as the only defendant on said claims. The constitutionality of this statute is currently the subject of a case pending before the Oregon Supreme Court. See *Clarke v. OSHU,* 206 Or. App. 610 (2006).

PAGE 24 - DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

invoked in this case, he still must plead and prove facts establishing the level of opprobrium required for this tort.  Nielson has not pled and cannot prove any such facts.

For these reasons, defendants are entitled to summary judgment on Nielson's IIED claim.


**K.  The defamation and false light claims**


In his eleventh and twelfth claims for relief, respectively, Nielson brings actions for defamation and false light.  These claims also appear to be brought against both defendants.  For the reasons advanced immediately above, defendant McNair is not a proper defendant on these claims.

These claims also fail on the merits, as a matter of law.  To the extent either claim is premised on the aforesaid allegations relating to the Port's release of the termination documentation to the media following the termination, that conduct was privileged insofar as it constituted compliance with a lawful order issued by the district attorney.  If Nielson intends to prove any other allegedly defamatory conduct by the defendants, it is incumbent upon him to plead facts in support of any such claim.  He has not done so.

Even if Nielson had pled facts that could be construed as actionable on theories of either defamation or false light, it bears noting that Nielson was a "public official" in all material respects.  As a result, Nielson is subject to the "actual malice" standard set forth in *New York Times Co. v. Sullivan,* 376 U.S. 254 (1964).  A "public official" within the foregoing rule is one who appears to have substantial responsibility for the conduct of governmental affairs.  Id. Clearly, as general manager of this Port district, Nielson qualified as such a public official.  See

PAGE 25 -  DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

also *Koch v. Laborico,* 66 Or. App. 78, 85, (1984); *McNabb v. Oregonian Publishing Co.,* 69 Or. App. 136, 139 (1984).

For the above reasons, defendants are entitled to summary judgment on Nielson's defamation and false light claims.

## CONCLUSION

For the foregoing reasons, defendants are entitled to summary judgment on each and every one of the claims set forth in plaintiff's complaint.

DATED: April 20, 2007.

MERSEREAU & SHANNON, LLP

_____*/s/ Peter Mersereau*_____
**PETER R. MERSEREAU, OSB No. 73202**
pmersereau@mershanlaw.com
**KAREN M. VICKERS, OSB No. 91381**
kvickers@mershanlaw.com
503.226.6400
Of Attorneys for Defendants

PAGE 26 -  DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT